**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

LOUIS TATTA,

                          Plaintiff,

        v.                                              No. 05-CV-71
                                                          (GLS/DRH)

DR. LESTER WRIGHT, Associate Commissioner
of Health Services for D.O.C.S.,

                          Defendant.

_____

**APPEARANCES:**                        **OF COUNSEL:**

LOUIS TATTA
Plaintiff Pro Se
No. 89-A-0004
Eastern New York Correctional Facility
Institutional Road
Post Office Box 338
Napanoch, New York 12458-0338

HON. ANDREW M. CUOMO                JAMES J. SEAMAN, ESQ.
Attorney General for the                Assistant Attorney General
   State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff pro se Louis Tatta ("Tatta"), an inmate in the custody of the New York State

Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. §

1983 alleging that defendant Dr. Lester Wright ("Dr. Wright"), DOCS Chief Medical Officer,

_____

        [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

violated his constitutional rights under the First, Eighth, and Fourteenth Amendments.  Am. Compl. (Docket No. 21).  Presently pending is Dr. Wright's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 22.  Tatta opposes the motion.  Docket No. 24. For the following reasons, it is recommended that Dr. Wright's motion be granted.

## I. Background

The facts are presented in the light most favorable to Tatta as the non-moving party. See Ertman v. United States, 165 F. 3d 204, 206 (2d Cir. 1999).

At all relevant times, Tatta was an inmate in the custody of DOCS.  In February 2000, Tatta was diagnosed with Hepatitis C.[2]  See Tatta Dep. (Seaman Aff. (Docket No. 22), Ex. A) at 28.  On July 25, 2000, Dr. Raelene Milicevic examined Tatta and recommended to Dr. Wright that Tatta begin treatment with a combination of non-Pegylated Interferon with Ribavirin ("Rebetron") to treat his Hepatitis C.  See Wright Decl. (Docket No. 22) at ¶ 28 & Ex. C.  Later that same day, Dr. Wright approved Dr. Milicevic's request to treat Tatta with Rebetron.  Wright Decl. at ¶ 29.  On December 4, 2000, Tatta was examined via telemed by Dr. Rogers, a gastroenterologist.  See Seaman Aff., Ex. C at 9.  Dr. Rogers discussed treating Tatta with Rebetron, but that Tatta preferred to wait to see if the Food and Drug Administration ("FDA") would approve Pegylated Interferon[3] for treating Hepatitis.  Id.

---

[2] Hepatitis C is "a chronic viral liver disease that can increase the risk of liver cancer and can lead to inflammation, scarring, and cirrhosis of the liver. Cirrhosis ultimately can lead to liver failure and death."  Pabon v. Wright, 459 F.3d 241, 246 (2d Cir. 2006).

[3] "Pegylated Interferon tends to be metabolized more slowly than non-Pegylated Interferon.  As a result, it tends to remain in the body for longer periods of time."  Wright Decl. at ¶ 20.

2

However, in late December 2000, Tatta consented to treatment with non-Pegylated Interferon with Ribavirin and on or about January 6, 2001, Tatta began receiving treatment. <u>See</u> Seaman Aff., Ex. C at 1-2, 10, 36.  The full course of treatment with non-Pegylated Interferon with Ribavirin is administered over forty-eight weeks.  <u>See</u> Wright Decl. at ¶ 24.

On or about January 19, 2001, the FDA approved the use of Pegylated Interferon for naive patients, <u>i.e.</u>, patients whose Hepatitis had not previously been treated with Interferon. <u>See</u> Seaman Aff., Ex. B at 1-4.  On July 9, 2001, Dr. Rogers examined Tatta and noted that even though Tatta had been treated with Rebetron for the past six months, the "rebetron has failed" and should be discontinued.  Seaman Aff, Ex. C at 14.  Dr. Rogers also noted that Tatta should return in six months for consideration of newer medication to treat his Hepatitis. <u>Id.</u>   Per Dr. Rogers' request, Tatta's treatment with Rebetron was discontinued on July 12, 2001.  <u>See</u> Seaman Aff., Ex. C at 3, 14.  On or about August 7, 2001, the FDA approved the use of Pegylated Interferon with Ribavirin for naive patients.  <u>See</u> Seaman Aff., Ex. B at 5-7; <u>see also</u> Wright Decl. at ¶ 10, 18-19.

On January 22, 2002, Tatta wrote Dr. Wright a letter seeking the status of his follow-up examination with Dr. Rogers.  <u>See</u> Wright Decl., Ex. D; <u>see also</u> Am. Compl. at ¶ 2.  Tatta also requested that if Pegylated Interferon with Ribavirin was not currently available to DOCS inmates, he be treated with Pegylated Interferon "as a maintenance therapy."  <u>Id.</u>  Dr. Wright forwarded Tatta's letter to Dr. Marc Stern for investigation and handling.  <u>See</u> Wright Decl. at ¶¶ 31-32.  On September 19, 2002, Dr. Stern responded to Tatta's January 2002 letter, noting that the re-treatment of patients such as Tatta with Pegylated Interferon was still deemed experimental by the FDA and, thus, would not be approved by DOCS.  <u>See</u> Wright

3

Decl., Ex. E.  During this time, Tatta was examined by Dr. Rogers, who noted that "[i]f approved by DOC[S]," Tatta may be retreated with Pegylated Interferon in combination with Ribavirin.  See Seaman Aff., Ex. C at 15.

On April 23, 2002, Tatta was examined by Dr. Douglas Fish, an infectious disease specialist, who agreed with Dr. Rogers' recommendation for retreating Tatta with Pegylated Interferon in combination with Ribavirin.  See Seaman Aff., Ex. C at 8, 16.  Shortly thereafter, Dr. Mikhail Gusman, a physician at Eastern Correctional Facility ("Eastern"), contacted Dr. Wright to request approval to retreat Tatta's Hepatitis C with the combination therapy of Pegylated-Interferon with Ribavirin.  See Wright Decl., Ex. H at 1-3; see also Am. Compl. at ¶ 4.  Dr. Wright informed Dr. Gusman that Pegylated Interferon was not approved by the FDA for retreatment of Hepatitis C.  See Wright Decl., Ex. H at 3-4.

On August 28, 2003, Dr. Carl Koenigsmann, a DOCS Regional Director, sent an e-mail to Dr. Milicevic at Eastern in response to a letter from Tatta requesting re-treatment of his Hepatitis.  See Seaman Aff., Ex. C at 37.  Dr. Koenigsmann noted that based on the new practice guidelines, Tatta's condition may be treatable with combination therapy of Pegylated Interferon with Ribavirin.  Id.  On September 18, 2003, Dr. Kathpalia, a psychiatrist, approved the recommended combination therapy of Pegylated Interferon with Ribavirin.  See Seaman Decl., Ex. C at 17.  On December 16, 2003, Dr. Milicevic submitted a request to Dr. Wright seeking approval to retreat Tatta's Hepatitis C with Pegylated Interferon in combination with Ribavirin.  See Wright Decl., Ex. K.  Shortly thereafter, Dr. Wright approved the request.  Id. On January 6, 2004, Tatta's retreatment began with the combination therapy of Pegylated

4

Interferon and Ribavirin.  See Seaman Aff., Ex. C at 7; see also Am. Compl. at ¶¶ 18-19.
This action followed.


## II. Discussion

Tatta asserts three causes of action against Dr. Wright alleging that he was (1)
deliberately indifferent to his serious medical needs in violation of the Eighth Amendment,
(2) discriminated against him because of his HIV status in violation of the Fourteenth
Amendment, and (3) retaliated against him for filing grievances in violation of the First
Amendment.  See Am. Compl. at 5.  Dr. Wright seeks judgment on all claims.


### A. Standard

A motion for summary judgment may be granted if there is no genuine issue as to any
material fact if supported by affidavits or other suitable evidence and the moving party is
entitled to judgment as a matter of law. The moving party has the burden to show the
absence of disputed material facts by informing the court of portions of pleadings,
depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the
case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248
(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the
non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine
issue for trial. The non-moving party must do more than merely show that there is some

doubt or speculation as to the true nature of the facts.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  <u>Gallo v. Prudential Residential Servs.</u> 22 F.3d 1219, 1223-24 (2d Cir. 1994); <u>Graham v. Lewinski</u>, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 477 (2d Cir. 2006).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  <u>Anderson</u>, 477 U.S. at 247-48.

## B. Eighth Amendment

Tatta contends that Dr. Wright intentionally delayed approval of his retreatment of Hepatitis C for twenty-two months.  <u>See</u> Am. Compl. at 5; <u>see also</u> <u>id.</u> at ¶ 18.  Liberally construed, Tatta also contends that "[Dr. Wright's] medical staff at Eastern . . . intentionally failed on numerous occasions to provide [Tatta] with his medications in a timely fashion." <u>See</u> Am. Compl. at 5.

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991); <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994).  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm."  <u>Hathaway</u>, 37 F.3d at 66.  The test for a § 1983 claim is twofold.  First, the prisoner

6

must show that there was a sufficiently serious medical need.  <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  <u>Id.</u>  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 844 (1994).

A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"  <u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995) (quoting <u>Johnson v. Busby</u>, 953 F.2d 349, 351 (8th Cir. 1991)).  An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious.  <u>Chance</u>, 143 F.3d at 702-03.  Here, Tatta's Hepatitis C virus constitutes a serious medical need.[4]  <u>See Johnson v. Wright</u>, 234 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) (citing cases).

Dr. Wright contends, however, that Tatta has failed to meet the deliberate indifference requirement of his claim.  Deliberate indifference requires the prisoner to prove that the

---

[4] In his memorandum of law, Dr. Wright does not appear to dispute the contention that Tatta's Hepatitis C constitutes a serious medical need.  <u>See</u> Def. Mem. of Law (Docket No. 22) at 2-7.

prison official knew of and disregarded the prisoner's serious medical needs.  Id. at 702.

Mere disagreement over proper treatment does not create a constitutional claim as long as

the treatment was adequate.  Id. at 703.  Allegations of negligence or malpractice do not

constitute deliberate indifference unless the malpractice involved culpable recklessness.

Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  Tatta contends that Dr. Wright

should have followed the recommendations of two outside specialists and Dr. Gusman, who

prescribed Pegylated-Interferon with Ribavirin for retreatment.  See Am. Compl. at ¶¶ 9, 18.

However, "[i]t is well-established that mere disagreement over the proper treatment does not

create a constitutional claim" so long as the treatment was adequate.  Chance, 143 F.3d at

703; see also McKenna v. Wright, No. Civ. 01-6571 (WK), 2002 WL 338375, at *8 (S.D.N.Y.

Mar. 4, 2002) ("courts have repeatedly held that dispute between two doctors as to the

proper course of medical treatment will not give rise to an Eighth Amendment violation")

(citations and internal quotations omitted).

Here, there is no evidence that the medical treatment Tatta received between Dr.

Wright's initial denial of Tatta's April 2002 request to be retreated with Pegylated Interferon in

combination with Ribavirin and his subsequent approval of Tatta's request in December 2003

was inadequate.  Further, Dr. Wright has repeatedly stated that he initially refused to re-treat

Tatta with Pegylated-Interferon with Ribavirin because, even though recommended by Drs.

Fish and Rogers, the treatment had yet to gain FDA approval.  See Wright Decl. at ¶¶ 18, 35-

39.  It was neither unreasonable nor indifferent for Dr. Wright to refuse a treatment not

approved by the FDA.  Thus, Tatta has failed to demonstrate that Dr. Wright was deliberately

indifferent to his serious medical needs.  See United States ex rel. Hyde v. McGinnis, 429

8

F.2d 864, 867-68 (2d Cir. 1970) (holding that inmates do not have the right to the medication of their choice).

As to Tatta's allegation that Eastern's medical department intentionally failed to provide him with his medications in a timely fashion, this contention is without merit.  Tatta contends that he was temporarily denied the following medications: Pegylated-Interferon, Glucerna (a dietary supplement), and Epogen (for anemia).  See Seaman Aff., Ex. B at 8-24. However, it is undisputed that Tatta's temporary delays in receiving his medications did not seriously affect his health.[5]  See Def. Statement of Material Facts (Docket No. 22) at ¶¶ 55, 61; Pl. Mem. of Law at ¶¶ 18, 21.  Further, Tatta offers only vague, conclusory allegations to show that the temporary delays in administering his medications presented a substantial risk of harm.  Thus, Tatta has failed to offer any evidence to demonstrate that the temporary delay in receiving his medications caused any serious harm, much less that Dr. Wright was in any way deliberately indifferent to Tatta's serious medical needs.  See Pierre v. County of Broome, No. Civ. 05-332 (TJM), 2007 WL 625978, at *5-6 (N.D.N.Y. Feb. 23, 2007).

Therefore, it is recommended that Dr. Wright's motion on this ground be granted.

_____

[5] Although Tatta contends that the delays in distributing Glucerna caused him to feel fatigued and weak, these temporary conditions hardly constitute a serious medical need.  See Pl. Reply Statement of Facts (Docket No. 24) at ¶ 21.

## C. Equal Protection

Liberally construed, Tatta's second cause of action alleges that Dr. Wright violated his equal protection rights under the Fourteenth Amendment when Tatta was treated differently from another inmate, Robert Wolley, whom Tatta contends was accorded the treatment sought by Tatta.  See Am. Compl. at ¶ 5, 10-13.

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination."  Myers v. Barrett, No. Civ. 95-1534(RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997).  In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005).

Tatta's equal protection claim fails for at least three reasons.  First, The evidence offered by Tatta to support this claim consists entirely of inadmissible hearsay information concerning Wooley's medical condition and treatment.  See Am. Compl. at ¶¶ 11-13.  Under Rule 56(e), the party opposing a motion for summary judgment must raise a material question of fact through affidavits "made"on personal knowledge."  A statement, as here, asserting the existence of facts not personally known to the declarant may not be

10

considered.  See Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004) (holding that hearsay in affidavit which would be inadmissible in evidence at trial could not be considered on motion for summary judgment).  Because Tatta's hearsay assertions regarding Wooley's medical condition and treatment would be inadmissible as hearsay if offered at trial, they may not be considered on this motion.  Since this presents the only genuine issue of fact on this claim, Tatta's claim on this ground should be denied.

Second, even if Tatta's statements about Wooley's condition and treatment are considered, there is insufficient evidence offered by Tatta to determine that Tatta and Wooley were similarly situated.  For example, it appears from the amended complaint that Tatta never responded medically to the treatment he received while Wooley responded medically for a period of one year before relapsing.  Am. Compl. at ¶ 12.  The undisputed fact that Wooley responded medically to the initial treatment while Tatta did not supports Dr. Wright's differentiated treatment of the two inmates and defeats Tatta's claim that the two inmates were similarly situated.  Tatta's equal protection claim, therefore, also fails for this reason.

Finally, even assuming that Tatta's hearsay assertions should be considered and credited, and assuming that Tatta and Wooley were similarly situated but treated differently, there is no evidence that Dr. Wright's different treatment of Tatta was motivated by discriminatory animus.  See Douglas v. Stanwick, 93 F. Supp. 2d 320, 325 (W.D.N.Y. 2000) (Larimer, J.) ("Not every physician will treat every ailment in exactly the same manner.").  As noted, there existed a rational basis for Dr. Wright to treat Tatta and Wooley differently based on their differing responses to prior treatment.  The record contains no evidence to refute that

Dr. Wright's different treatment of Tatta was motivated by anything other than this medical fact.  Tatta's claim should also be denied for this reason.

Therefore, it is recommended that Dr. Wright's motion on this ground be granted.


## D. Retaliation

In his third cause of action, Tatta contends that "in retaliation for plaintiff's filings of numerous grievances against the medical department, defendant's medical staff at Eastern . . . intentionally failed on numerous occasions to provide the plaintiff with his medications in a timely fashion as prescribed by the facility doctor . . . ."  Am. Compl. at 5.

In order to prevail on a retaliation claim, a plaintiff must first assert that his conduct was constitutionally protected and that this conduct was a "substantial factor" that caused the adverse action against plaintiff.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  The burden then shifts to the defendant to show that by a preponderance of the evidence, the adverse action would have resulted even in the absence of the protected conduct.  Id.; see also Dawes v. Walker, 239 F.3d 489, 492 (2d. Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema, 534 U.S. 506 (2002).  Retaliation claims are actionable because the conduct may tend to chill an individual's exercise of constitutional rights.  Dawes, 239 F.3d at 491.  However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters.  Id.

Here, Tatta's filing of grievances were clearly assertions of a constitutional right protected by the First Amendment.  See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).  Tatta claims that the adverse action which resulted from this conduct was the

intentional delay of providing him with his medications.  To constitute adverse action, a plaintiff must establish that the action would deter a similarly situated individual from exercising his or her constitutional rights. Dawes, 239 F.3d at 491.  It is reasonably possible that other inmates would fail to exercise their constitutional right to file grievances for fear that their medications would not be provided to them in a timely fashion.  However, as discussed supra, Tatta was not denied adequate or timely medical attention.  Thus, Tatta fails to demonstrate that he suffered any adverse action as a result of his filing of grievances.[6]

Therefore, Dr. Wright's motion for summary judgment on this ground should be granted.


**E. Qualified Immunity**

Dr. Wright also contends that he is entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  A court must first determine that if plaintiff's allegations are accepted as true, there would be a

---

[6] Moreover, Tatta has failed to demonstrate that Dr. Wright was personally involved in the temporary denial of medications.  There is no evidence beyond Tatta's conclusory allegations that Dr. Wright participated in the temporary denial of medications, created a policy which allowed the temporary denial of medications to continue, or was grossly negligent in managing the medical staff at Eastern.

constitutional violation.  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Tatta's allegations as true, he has not shown that Dr. Wright violated his constitutional rights.

Therefore, in the alternative, it is recommended that Dr. Wright's motion on this ground be granted.

### III.  Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that Dr. Wright's motion for summary judgment (Docket No. 22) be **GRANTED** and the case be terminated.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED:  August 17, 2007
        Albany, New York                    _____
                                            United States Magistrate Judge

14